UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAVEH KHAST,<br><br>            Plaintiffs,<br><br>vs.<br><br>WASHINGTON MUTUAL BANK; JP MORGAN BANK; CALIFORNIA RECONVEYANCE COMPANY,<br><br>            Defendants. | **CASE NO: 10-CV-2168-IEG (JMA)**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>[Doc. No. 1.] |

Presently before the Court is Plaintiff's motion for a temporary restraining order, filed within Plaintiff's complaint on October 18, 2010. (Doc. No. 1.) Plaintiff requests that the Court enjoin Defendants from foreclosing upon and selling his home, currently scheduled to be sold on October 27, 2010. For the reasons stated herein, the Court GRANTS the motion.

**FACTUAL BACKGROUND**

The following facts are drawn from Plaintiffs' Verified Complaint. The Court sets out only those facts necessary to support the grounds for resolving the requested relief.

On or about April 11, 2006, Plaintiff entered into a residential mortgage loan with Defendant Washington Mutual Bank ("WAMU") for the purchase of a single-family home, located at 7234 Encelia Drive, La Jolla, California 92037 ("Property").

Plaintiff made all payments in a timely manner and according to the terms of the loan for approximately two years.  On or about May 12, 2008, Plaintiff contacted WAMU to request that the loan be restructured.  At that time, a representative of WAMU instructed Plaintiff (a) that WAMU would modify his loan, but only if Plaintiff was in default, and (b) that he should purposely stop making payments on the loan so that he would enter default and qualify for restructuring.  Plaintiff immediately ceased making mortgage payments for a period of ninety (90) days, after which he contacted WAMU seeking a loan modification package.

WAMU mailed loan modification documents to Plaintiff, which he completed and returned to WAMU with all requested supporting documentation.  Plaintiff contacted WAMU approximately one week after submitting the loan modification documents and a WAM U representative confirmed receipt of Plaintiffs loan modification documents.  The WAMU representative further informed Plaintiff that an agent would be assigned to handle his request, but that the process of assigning the agent would take approximately one to two months.

When WAMU did not contact Plaintiff within two months of Plaintiff's conversation with the WAMU agent, Plaintiff contacted WAMU to inquire about the status of his application.  A WAMU agent informed Plaintiff that his application and supporting documentation for the requested loan modification application were missing and that Plaintiff would have to reapply.  Plaintiff immediately prepared a second application and sent it to WAMU via overnight mail.

When WAMU did not contact Plaintiff for thirty (30) days after Plaintiff submitted his second application for loan modification, Plaintiff contacted WAMU telephonically.  Plaintiff learned at that time that the Federal Trade Commission had issued a cease and desist order against WAMU and that Defendant JPMorgan Chase Bank ("JPM Chase") had assumed all of WAMU's assets and liabilities.

Plaintiff then contacted JPM Chase, and a JPM Chase representative told Plaintiff that his loan modification application was missing and that he needed to submit a third application.  Plaintiff thereafter hired Mr. Martin Estehaghi to negotiate with JPM Chase on Plaintiff's behalf.

Plaintiff submitted his third loan modification application, and Mr. Estehaghi successfully obtained a "conditional" loan modification from JPM Chase.  JPM Chase sent Plaintiff a related document, which Plaintiff signed, and Plaintiff resumed making monthly mortgage payments.

At some unspecified time thereafter, Plaintiff contacted the JPM Chase agent assigned to Plaintiff's loan modification to inquire about the status of Plaintiff's property insurance and taxes. An agent of JPM Chase informed Plaintiff that he would have to file a fourth application to modify his loan. Mr. Estehaghi sent the fourth application on Plaintiff's behalf. JPM Chase quickly denied Plaintiff's fourth application and issued a Notice of Trustee's Sale for the Property.

Plaintiff has since made repeated requests for JPM Chase to provide documents related to his loan, but JPM Chase has refused to comply with any of Plaintiff's requests.

**PROCEDURAL HISTORY**

On October 18, 2010, Plaintiff, proceeding pro se, filed a complaint against Defendants WAMU, JPM Chase, and California Reconveyance Company ("CRC"), within which Plaintiff also requested a temporary restraining order. (Doc. No. 1.)

**DISCUSSION**

**I.    LEGAL STANDARD**

A party seeking a preliminary injunction must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., — U.S. —, 129 S.Ct. 365, 374 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 375-76.

**II.    ANALYSIS**

**A.    Likelihood of Success on the Merits**

**1.    Violations of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200**

California's unfair competition statute prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 (2009).[1] Because Section 17200 is written in the disjunctive, it prohibits three separate types of unfair competition: (1) unlawful acts or practices,

---

[1] Plaintiff is a California resident, Defendant JPM Chase is incorporated in Delaware, and the amount in controversy exceeds $75,000. Thus, it appears that this case is properly before the court based on diversity jurisdiction. 28 U.S.C. § 1332.

1  (2) unfair acts or practices, and (3) fraudulent acts or practices. Cel-Tech Commc'ns, Inc. v. Los
2  Angeles Cellular Tel. Co., 83 Cal. Rptr. 2d 548, 561 (Cal. 1999). By proscribing "unlawful" acts or
3  practices, "Section 17200 'borrows' violations of other laws and treats them as unlawful practices
4  independently actionable." Id. at 539-40.

5  When an action is brought by a consumer against the creditor, as is the case here, a broader
6  definition of the word "unfair" applies than when an action is between direct competitors. In this
7  context, an "unfair" business practice occurs "when it offends an established public policy or when the
8  practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." See
9  People v. Casa Blanca Convalescent Homes, Inc., 159 Cal. App. 4th 509, 530 (1984), abrogated on
10 other grounds in Cel-Tech, 83 Cal. Rptr. 2d at 565 & n.12; accord McDonald v. Coldwell Banker, 543
11 F.3d 498, 506 (9th Cir. 2008).

12 The term "fraudulent" as used in Section 17200 "does not refer to the common law tort of
13 fraud" but only requires a showing members of the public "are likely to be deceived." Puentes v.
14 Wells Fargo Home Mortg., Inc., 72 Cal. Rptr. 3d 903, 909 (Ct. App. 2008) (quoting Saunders v.
15 Superior Court, 33 Cal. Rptr. 2d 438, 441 (Ct. App. 1994). "Unless the challenged conduct 'targets a
16 particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable
17 consumer.'" Puentes, 72 Cal. Rptr. 3d at 909 (quoting Aron v. U-Haul Co. of Cal., 49 Cal. Rptr. 3d
   555, 562 (Ct. App. 2006)).
18
19 Claims grounded in fraud, including those alleged under Section 17200, must be pled with
20 particularity under Rule 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009)
21 ("We have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for
22 violations of the . . . UCL"). "In cases of corporate fraud, however, the pleading standard is relaxed
23 since the circumstances may make it difficult to attribute particular fraudulent conduct to each
24 defendant as an individual. Rule 9(b) serves to give defendants notice of the specific fraudulent
25 conduct against which they must defend." 625 3rd St. Assoc., L.P. v. Alliant Credit Union, 633
26 F.Supp.2d 1040, 1049-50 (N.D. Cal. 2009) (citing Bly-Magee v. California, 236 F.3d 1014, 1018 (9th
   Cir.2001).
27 
28 Plaintiff claims that, around May 12, 2008, a representative of Defendant WAMU instructed
   him to cease making the scheduled payments and to default on his loan, and that if Plaintiff complied,

WAMU would restructure his loan.  Plaintiff's defaulting on the loan enabled Defendants to begin nonjudicial foreclosure proceedings, culminating with the scheduled sale of the Property on October 27, 2010.  See CAL. CIV. CODE § 2924 (California law only permits foreclosure proceedings after the debtor enters default); Castillo v. Skoba, No. 10-CV-1838-BTM, 2010 WL 3986953, *2 (S.D. Cal. Oct. 8, 2010) (citing CAL. CIV. CODE § 2924) ("The power of sale in a nonjudicial foreclosure may only be exercised when a notice of default has first been recorded."); In Re Henry, 266 B.R. 457, 472 n.14 (C.D. Cal. 2001) (citing CAL. CIV. CODE § 2924) ("Under California law, a secured creditor has no right to commence foreclosure proceedings unless the debtor is in default.").

Taking these allegations as true, the conduct by WAMU appears to be "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and thus satisfies the UCL's "unfair" prong. See Casa Blanca, 159 Cal. App. 4th at 530; McDonald, 543 F.3d at 506.  Moreover, a reasonable consumer is likely to rely on representations by a bank's agent; thus, such conduct also violates the UCL's "fraudulent" practices prong.  See Puentes, 72 Cal. Rptr. 3d at 909.

Plaintiff has stated that he possesses documents which support his contention that Defendant WAMU instructed Plaintiff to purposefully enter into default and assured Plaintiff that, if he did so, WAMU would restructure his loan.  Accordingly, Plaintiff has demonstrated that at this time he is likely to succeed on the merits of his claim under the UCL.

### 2. Promissory Estoppel

Plaintiff alleges that on or about May 12, 2008, a representative of Defendant WAMU told Plaintiff that it would modify his mortgage, but only if Plaintiff was in default.  The same WAMU representative, Plaintiff alleges, then "instructed Plaintiff to purposely stop making his mortgage payments in order to qualify."  (Doc. No. 1 at ¶¶ 22.)  Relying on that statement, Plaintiff ceased making the scheduled payments and defaulted on his loan.  Defendants, however, did not restructure Plaintiff's loan.  After Plaintiff defaulted on his loan, California law allowed Defendants to foreclose on Plaintiff's property unless Plaintiff has defaulted on the loan.  CAL. CIV. CODE § 2924.

"The doctrine of promissory estoppel 'make[s] a promise binding under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange.'"  Garcia v. World Sav., FSB, 107 Cal. Rptr. 3d 683, 692 (Ct. App. 2010) (quoting Youngman v. Nev. Irrigation Dist., 70 Cal. 2d 240, 249 (1969)); accord Raedeke v. Gibralter Sav. & Loan Ass'n, 10 Cal. 3d 665,

672 (1974). "Under this doctrine a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." Youngman, 10 Cal. 3d at 249. "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted." Garcia, 107 Cal. Rptr. 3d at 692 (internal quotation marks and citations omitted). Where a party acts to its detriment in reliance on a promise, promissory estoppel affords that party a remedy, even where the promisor received no consideration for its promise. See Garcia, 107 Cal. Rptr. 3d at 692 (citing Wade v. Markwell & Co., 118 Cal. App. 2d 410, 420 (1953)).

In this case, Plaintiff has alleged (a) that Defendant WAMU promised to modify Plaintiff's loan if Plaintiff stopped making payments and defaulted, (b) that Plaintiff relied on Defendant's promise and therefore stopped making payments and entered default, and (c) that Defendant failed to modify Plaintiff's loan as promised. Plaintiff has stated that he possess documents to support this claim, and he has thus shown that he is likely to succeed on the merits of his promissory estoppel claim. See Youngman, 10 Cal. 2d at 249-51; Garcia, 107 Cal. Rptr. 3d at 695-97.

**B.      Likelihood of Irreparable Harm**

A plaintiff seeking a temporary restraining order or preliminary injunction must demonstrate that "irreparable injury is likely in the absence of an injunction." Winter, 129 S.Ct. at 375 (emphasis in original). This requires a plaintiff to demonstrate more than the "possibility" of irreparable harm. Id.

If the foreclosure sale of Plaintiff's Property proceeds on October 27, 2010, as scheduled, Plaintiff will lose his home. Losing one's home through foreclosure is an irreparable injury. See Alcaraz v. Wachovia Mortgage FSB, 592 F.Supp.2d 1296, 1301 (E.D. Cal. 2009) ("Clearly, loss of a home is a serious injury.").

Plaintiff has thus demonstrated the likelihood of irreparable injury absent judicial intervention.

**C.      Public Interest**

A plaintiff seeking a temporary restraining order or preliminary injunction must demonstrate that an injunction is in the public interest. Winter, 129 S.Ct. at 374. Plaintiffs bear the initial burden. Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009) (citing Winter, 129 S.Ct. at 378).

1   There is a strong interest in accurately resolving ownership of real property.  See DaSilva v.
2   Wells Fargo Bank, N.A., No. 3:10-cv-00381, 2010 WL 3910139, at *7 (D. Nev. Oct. 1, 2010) ("[The]
3   public interest in the prevention of improper nonjudicial foreclosures is great."); Perry v. Nat'l Default
4   Servicing Corp., No. 10-CV-03167, 2010 WL 3325623. at *6 (N.D. Cal. Aug. 20, 2010) (nothing that
5   preventing a party from proceeding with a foreclosure sale to which it is entitled does not serve the
6   public interest).  Because Plaintiff has demonstrated likelihood of success on the merits, Plaintiff has
7   shown that the public interest favors granting his request for a temporary restraining order.

**D.     Balance of Hardships**

In order to obtain injunctive relief, a plaintiff must establish that "the balance of equities tips in his favor." Winter, 129 S.Ct. at 374.   The district court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Id. at 376 (quoting Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 542 (1987). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 129 S.Ct. at 376-77 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)).

The balance of hardships weighs in Plaintiff's favor.  If the sale of Plaintiff's Property proceeds as scheduled, Plaintiff will lose his home.  Even if Defendants were ultimately to prevail, a temporary restraining order will only force them to delay the sale of the Property by a matter of days.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

**CONCLUSION**

The Court GRANTS Plaintiffs' motion for a temporary restraining order, and HEREBY ORDERS the following:

(1) Defendants are ordered to refrain from foreclosing upon and selling Plaintiff's home until the Court can hold a hearing on whether a preliminary injunction should issue.

(2) Plaintiff shall personally serve this Order upon Defendants forthwith.

(3) Additionally, the clerk is instructed mail copies of this Order to JPMorgan Chase Bank and to Washington Mutual Bank at 10790 Rancho Bernardo Rd., San Diego, CA  92127-9011.

(4) Defendant shall file a responsive pleading on or before **Wednesday, November 3, 2010**.

(5) Plaintiff's request for preliminary injunction shall be heard on **Wednesday, November 10, 2010** at **3:00 p.m.**

DATED:  October 26, 2010.

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**